UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

In re:

     Amy E. Kowall,                             Case No: 04-33668-dof
                                               Chapter 13 Proceeding

     Debtor.

_____/

Amy E. Kowall,

     Plaintiff,

v.                                               Adv. Pro. No. 10-03221-dof

GMAC Mortgage LLC

     Defendant.

_____/

Opinion Granting in Part and Denying in Part
Defendant's Motion for Summary Judgment

The Plaintiff, Amy E. Kowall, is a former Chapter 13 debtor. After re-opening her

bankruptcy case, the Plaintiff commenced this adversary proceeding against the Defendant,

GMAC Mortgage LLC, to recover damages sustained from alleged violations of the automatic

stay under 11 U.S.C. § 362, the discharge injunction provided by 11 U.S.C. § 524, and the Fair

Credit Reporting Act. In her Amended Complaint, the Plaintiff raises various allegations against

the Defendant based on information it furnished to consumer reporting agencies as to the

delinquency status of the Plaintiff's account after the filing date of her Chapter 13 bankruptcy

petition and subsequent to her award of a discharge under 11 U.S.C. § 1328(a).

     Currently before the Court is the Defendant's Motion for Summary Judgment for failure

to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative on a

limited basis, for summary judgment pursuant to Federal Rule of Civil Procedure 56. This Court

has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334(a), 157(a), and 157(b)(1) along with E. D. Mich. LR 83.50(a).

For the reasons explained in this opinion, the Court grants in part and denies in part the Defendant's motion.

<u>Procedural History</u>

On April 1, 2010, Ms. Kowall (the "Plaintiff"), initiated this adversary proceeding by filing a six count complaint against GMAC Mortgage LLC and Litton Loan Servicing. Subsequently, Litton Loan Servicing reached a settlement with the Plaintiff and is no longer a party to this proceeding.

On July 21, 2010, the Plaintiff filed a three count Amended Complaint against GMAC Mortgage (the "Defendant"). Instead of filing an answer, the Defendant moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b) or, in the alternative if applicable, for summary judgment pursuant to Federal Rule of Civil Procedure 56(b). Due to issues raised by the parties at the hearing on the Defendant's motion, supplemental briefs or exhibits were required be filed by both parties. The Plaintiff filed a lengthy response in opposition to the Defendant's motion. The Defendant filed a reply brief. Subsequent to the hearing on the Defendant's motion, the Plaintiff filed a supplemental exhibit. The Defendant in turn filed a supplemental brief and exhibit. The motion has been fully briefed by the parties.

2

<u>The Amended Complaint</u>

The Amended Complaint contains numerous factual allegations and legal conclusions. There are ten exhibits attached to the Amended Complaint. These exhibits become part of the Amended Complaint for pleading purposes under Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 10(c). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007) (pointing out that a "court[] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 and Supp. 2007)). The following are the factual allegations from the Amended Complaint and the attached exhibits.

On September 7, 2004, the Plaintiff filed a Chapter 13 bankruptcy petition. Prior to filing bankruptcy, the Plaintiff obtained funds from First National Bank of Arizona "for a purchase money transaction for a personal residence on October 8, 2003." The servicing rights for the loan from First National Bank of Arizona were held by Homecomings Financial, "which is affiliated with GMAC Mortgage LLC."

On September 17, 2004, Homecomings Financial filed a proof of claim. Later an amended proof of claim was filed on September 24, 2004, by Mortgage Electronic Registration Systems, Inc., as nominee for Lender, Homecoming Financial Network, representing that it held a secured claim of $54,646.36, which included an arrearage amount of $4,352.60. On the amended proof of claim, the Plaintiff's account number is represented as beginning with 043694.

An order confirming the Plaintiff's Chapter 13 Plan was entered on February 10, 2005.

The Plaintiff's Chapter 13 plan provided for "a payment to Homecomings Financial for her residence at 3013 Winona Street, Flint, MI 48504" of $693.00, which consisted of $493.00 toward the monthly mortgage payment and $200.00 on the arrearage of $5,400.

Sometime in February 2005, "GMAC Mortgage LLC furnished unknown information to Experian about Plaintiff's account." In support of this allegation, the Plaintiff attached as Exhibit 2 to the Amended Complaint, a two page document indicating that it is a credit report prepared by Experian for the Plaintiff. This credit report is dated July 1, 2010. Listed on the credit report is information about the Plaintiff's account with GMAC Mortgage including: (1) Account Number: 43694; (2) Status: Petition for Chapter 13 bankruptcy; (3) Date Opened: 10/2003; (4) Date of Status: 06/2004; (5) Reported Since: 02/2005; (6) Last Reported Date: 02/2005; (7) Type: Mortgage; (8) Terms: 30 Years; (9) Monthly Payment: $0; (10) Responsibility: Individual; (11) Credit Limit: $51,300; (12) High Balance: N/A; (13) Recent Balance: $0; (14) Recent Payment: $0; (15) Creditor's Statement: Foreclosure proceedings started; and (16) Account History: Filed Chapter 13 Bankruptcy on "June 25, 2004."

On April 13, 2005, the servicing of the Plaintiff's mortgage was transferred from Homecomings Financial to First National Bank of Arizona. A notice of the transfer of this claim was filed in the Plaintiff's bankruptcy case.

On July 18, 2005, a second notice of transfer claim was filed in the Plaintiff's bankruptcy case. A copy of the second notice of transfer claim filed on July 18, 2005 is attached as Exhibit 4 to the Amended Complaint. The second notice of transfer claim designates the seller/transferor/ assignor as Mortgage Electronic Registration Systems, Inc. and Homecoming Financial Network. The purchaser/assignee/transferee is designated as MTGLQ Investors, L.P.

4

and Ocwen Federal Bank.  The second notice of transfer of claim states, in relevant part:

> OCWEN FEDERAL BANK, FSB (hereafter "Assignee") hereby provides notice of the unconditional sale and transfer of all right, title, and interest in and to the Claims (as such defined in the attached Assignment or Power of Attorney by and between the Seller/Transferor (hereafter Assignor) including the Claim referenced above (the "Bankruptcy Claim").
>
> Pursuant to Bankruptcy Rule 3001(e)(2) and the foregoing assignment, the Assignee hereby requests that it be substituted for the Assignor as the record holder of the Bankruptcy Claim for all purposes in these proceedings.  As is set forth in the attached assignment, the Assignor concurs with the request, and is aware of the transfer, and declines the opportunity to object under FRBP 3001(e)(2).  Accordingly, the Assignee requests that the transfer of the Bankruptcy Claim be made immediately upon the docketing of the Joint Notice of Transfer of Claim.

The Bankruptcy Claim is designated as Claim No. 4 in the amount of $54,646.36.  A copy of a "Limited Power of Attorney" dated August 24, 2004 is attached to the second notice of transfer of claim

The Chapter 13 Trustee prepared a final report and account.  No objections were filed by any of the Plaintiff's creditors to the Trustee's final report. On July 3, 2008, the Court entered an "Order Discharging Debtor After Completion of Chapter 13 Plan."

Sometime in November 2008, the Plaintiff sought to refinance the mortgage on her home but was ultimately denied. To support this allegation, the Plaintiff relied on and attached as Exhibit 6 to the Amended Complaint a one page document from an entity designated as "CBCInnovis" and entitled with the phrase "Score Disclosure."  The date the document was "Received" and "Completed" is indicated as November 19, 2008.  Under a "Scoring" provision, indecipherable numerical values related to frequent delinquency are listed with the following language:

5

Classic Score
Serious Delinquency, and Public Record of Collection Filed
Time Since Delinquency is too recent or unknown
Proportion of revolving balances to revolving credit limits is too high

The Plaintiff investigated her credit report and realized that the Defendant "had continued to allow a past due balance to remain on her credit report for several years." Attached as Exhibit 10 to the Amended Complaint, is a copy of page 5 of a 30 page document designated as a "Equifax FACT Act." According to the Plaintiff, this document indicates that "as of April 1, 2010, GMAC Mortgage LLC was reporting a past due amount owed of $1,607.00 with a date reported of "09/2004" and an account status indicating "Pays 61-90 Days" with regard to the Plaintiff's account.

On January 31, 2010, counsel for the Plaintiff sent an email to the Defendant's attorney "to obtain concurrence on a motion for violation of the discharge injunction relating to the credit reporting issue." On February 3, 2010, the Defendant "accessed the Plaintiff's credit report to conduct an account review even though Plaintiff had [not] had an account with the Defendant "since at least 2005," and as early as August 2004, when it "reported to Trans Union that it had closed" the Plaintiff's account. Plaintiff disputed the past due amount allegedly owed by her to the Defendant with all three consumer reporting agencies. Subsequent to the commencement of this adversary proceeding, the Defendant allegedly "re-reported the existence of a past due amount to at least one credit reporting agency." The Plaintiff claims damages as a result of the Defendant's acts.

<u>Applicable Law</u>

A.    <u>Standard: Failure to State a Claim</u>

Federal Rule of Civil Procedure 12(b), applicable in this adversary proceeding through

Federal Rule of Bankruptcy Procedure 7012, states:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in a responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted.

The United States Supreme Court revisited the standards that govern Rule 12(b)(6) dismissal motions in *Bell Atlantic Corp.*, v. *Twombly*, 550 U.S. 544 (2007). In doing so, the Supreme Court in *Twombly* reaffirmed the "notice pleading" standard of Civil Rule 8(a)(2) but renounced the "no set of facts" standard announced in *Conley v. Gibson* many years ago. *Twombly*, 550 U.S. at 563. As explained by the Supreme Court,

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]". . . While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]

*Twombly*, 550 U.S. at 555 (citations omitted). The *Twombly* Court went on to

> hold that stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest [grounds for relief]. Asking for plausible grounds to infer [a right to relief] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [of an entitlement to relief]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."

7

550 U.S. 544, 556, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

*Twombly* does "not requir[e] a universal standard of heightened fact pleading, but [ ] instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park District*, 499 F.3d 538, 541 (6th Cir. 2007) (internal quotation marks and citation omitted) (emphasis in original). On the other hand, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. - - -, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (clarifying the analytical framework established under *Twombly*). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. (citing *Twombly*, 550 U.S. at 555). Under Rule 8, allegations in a complaint that consist of "nothing more than conclusions" will "not unlock the doors of discovery for a plaintiff[.]" *Id*.

B.    Standard: Summary Judgment

Federal Rule of Civil Procedure 56 for summary judgment is incorporated into Federal Rule of Bankruptcy Procedure 7056. Under Rule 56(a), a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56(b), "a party may file a motion for summary judgment at any time[.]"

As construed by decisions of the United States Supreme Court, "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[T]here is no issue for

trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." *Kalamazoo River Study Group v. Rockwell International Corp*., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d (1986).

Analysis

The crux of the Plaintiff's allegations under Counts I and II of the Amended Complaint is that the Defendant continued to furnish information to consumer reporting agencies about an existing past due balance of $1,607.00 on the Plaintiff's account along with a payment history of 61-90 days while her Chapter 13 case was pending and after she had been awarded a Chapter 13 discharge. Although not entirely clear, according to the allegations in the Amended Complaint, the Defendant held the servicing rights to the Plaintiff's loan through its affiliation with Homecomings Financial. The Plaintiff characterizes the Defendant's communication with consumer reporting agencies as "attempts to collect a debt." Based on this premise then, the Plaintiff contends that the Defendant's failure to furnish up-to-date or accurate information about the status of the Plaintiff's account to consumer reporting agencies are either violations of the automatic stay or the discharge injunction as provided under the Bankruptcy Code. In Count III, the Plaintiff asserts that the Defendant's access of her credit report in February 2010 to conduct an account review on her closed account is a violation of the Fair Credit Reporting Act. For

9

each of these counts, the Plaintiff requests damages as permitted by the applicable law.   The

Court will separately consider each count.  In doing so, the Court construes the Amended

Complaint in the light most favorable to the Plaintiff, accepts the allegations as true, and draws

all reasonable inferences in favor of the Plaintiff.  *Directv, Inc. v. Tree*, 487 F.3d 471, 476 (6th

Cir. 2007).  The Court does not, however, "accept as true legal conclusions or unwarranted

factual inferences."  *Id*.

A.    *Automatic Stay Violation*

Under 11 U.S.C. § 362(a), the filing of a Chapter 13 petition "operates as a stay,

applicable to all entities."  The automatic stay "gives the debtor a breathing spell" and "stops all

collection efforts, all harassment, and all foreclosure actions."  *Javens v. City of Hazel Park*, 107

F.3d 359, 363 (6th Cir. 1997) (quoting H.R. Rep. No. 95-595, at 340 (1978)).  Relevant to this

proceeding, Section 362(a)(6) stays "any act to collect, assess, or recover a claim against the

debtor that arose before the commencement of the case under this title."  If an individual is

"injured by any willful violation" of the automatic stay, Section 362(k)(1) expressly allows for

the recovery of "actual damages, including costs and attorneys' fees, and in appropriate

circumstances, . . . punitive damages."  To state a claim and recover under Section 362(k)(1), a

debtor must establish three elements: (1) a violation of automatic stay; (2) the violation was

committed willfully; and (3) the violation injured the individual seeking damages.  *Grine v.

Chambers* (*In re Grine*), 439 B.R. 461, 466 (Bankr. N.D. Ohio 2010) (citing *In re Skeen*, 248

B.R. 312, 316 (Bankr. E.D. Tenn. 2000).

It is well established that a willful violation may be found "when the creditor knew of the

stay and violated the stay by an intentional act."  *TranSouth Fin. Corp. v. Sharon* (*In re Sharon*),

234 B.R. 676, 687 (B.A.P. 6th Cir. 1999).  Proof of a specific intent to violate the stay is not

required. *Id.* The creditor "must have only intended the act, which violated the stay." *Harris v. Memorial Hospital* (*In re Harris*), 374 B.R. 611, 614 (Bankr. N.D. Ohio 2007).

In Count I of the Amended Complaint, the Plaintiff alleges that the Defendant violated Section 362(a)(6) by furnishing information to consumer reporting agencies that a past due balance of $1,607.00 existed on her account along with a payment history of 61-90 days after the filing date of her Chapter 13 petition on September 7, 2004. The Plaintiff further alleges that the Defendant "failed to accurately report to the credit reporting agencies that the loan and/or servicing rights had been transferred to another entity in 2005." Plaintiff also alleges that the Defendant "by failing to comply with industry standard," to update its records and then to furnish such updated information to third parties, "was maintaining that it was owed monies that it was not owed because the loan had been transferred." The Plaintiff asserts that these "acts, representations and omissions" by the Defendant are "attempts to collect a debt." As pled in Count I, the Plaintiff's allegations involve information furnished by the Defendant to consumer reporting agencies for two time periods: September 2004 and February 2005.

1.    September 2004

For the first time period, the Defendant contends that no violation of the automatic stay could have occurred because the date it furnished information to consumer reporting agencies was on September 1, 2004. The Defendant points out that the filing date of the Plaintiff's bankruptcy petition was September 7, 2004. In support of its position, the Defendant relies on Exhibit A, which is a copy of an internal report entitled "Credit History" of the Plaintiff's account with the Defendant. This internal report contains a column entitled "Report Date," under which appears numerous dates beginning with "3/1/2004" and ending with the date "9/1/2004." The Defendant requests that the Court grant summary judgment pursuant to Federal

11

Rule of Civil Procedure 56(a), which applies in adversary proceedings under Federal Rule of Bankruptcy Procedure 7056, to the extent its internal report establishes that it furnished information about the Plaintiff's account prior to the filing date of her Chapter 13 bankruptcy petition.

In her response to the Defendant's motion, the Plaintiff agreed that the "information" provided by the Defendant indicated that its act of furnishing information about the existing past due balance on her account on September 1, 2004 "is not a violation of the automatic stay." In her brief, the Plaintiff agreed to dismiss any allegations pleading a violation of the automatic stay premised on pre-petition information furnished by the Defendant. The Plaintiff, however, did not agree to dismiss any allegations that the Defendant continued to furnish improper information about the Plaintiff's account after September 7, 2004 (i.e., post-petition).

At the hearing on the Defendant's motion, however, the Plaintiff questioned the authenticity of the internal report filed by the Defendant because it was not accompanied by an affidavit to establish that the internal report is a business record kept by the Defendant and to explain the information that appears in the report. After further questioning by the Court, the Defendant agreed to file a supplemental affidavit to support its internal report.

Subsequent to the hearing on the Defendant's motion, the Defendant filed the affidavit of its employee, Nancy Penca, a senior business analyst lead. In her affidavit, Ms. Penca represents that its internal report entitled "Credit History," attached as Exhibit A to the Defendant's motion, is a record kept in the ordinary course of business "to maintain [a] record of all the dates when it has reported data to credit bureaus with regard to a specific loan number." Ms. Penca further represents that the dates reflected in the internal report of March 1, 2004, through September 1, 2004, are the dates that GMAC Mortgage LLC furnished information to consumer reporting

agencies about the Plaintiff's loan, which was assigned a loan number beginning with 0436944.

In light of the Defendant's supplemental affidavit, the Court determines that the Defendant is entitled to partial summary judgment on Count I to the extent the Plaintiff alleged that the Defendant violated the automatic stay by furnishing information to consumer reporting agencies on September 1, 2004. There is no genuine issue of material fact that any information furnished by the Defendant on September 1, 2004, would have occurred prior to the filing date of the Plaintiff's Chapter 13 petition on September 7, 2004. The automatic stay would not have been in effect until six days after the Defendant's furnished information to consumer reporting agencies. The Court concludes that the Defendant is entitled to judgment as a matter of law on this discrete and dispositive issue.

In reaching this conclusion, the Court considered the supplemental exhibit filed by the Defendant. The Plaintiff had notice and was aware at the time of hearing on the Defendant's motion that the Court would be considering material outside the scope of the Amended Complaint. *See Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993) (explaining that "a party cannot raise for the first time on appeal an argument that she was surprised by the conversion of the motion to dismiss into a motion for summary judgment, when the party was aware that materials outside the pleading had been submitted to the court before the court granted the motion"). Subsequent to the filing of the Defendant's affidavit, the Plaintiff did not come forward with any specific fact to show that there is a genuine issue of material fact on the limited legal theory of the Defendant's liability for an alleged violation of the automatic stay for the time period of September 1, 2004. In addition, the Court notes that the Plaintiff filed a response to the Defendant's motion for summary judgment and a supplemental exhibit but did not file a Rule 56(d) affidavit or a motion requesting the need for discovery to uncover material

facts on this narrow legal issue. *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 384 (6th Cir. 2008) (holding that a Rule 56(d) affidavit is "necessary in order to preserve the argument that the grant of summary judgment was too hasty and precluded necessary discovery."); *see also Plott v. General Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir. 1995) (explaining the importance of a party's compliance with Rule 56(d) to preserve an appellate court's review for abuse of discretion a claim that summary judgment was prematurely entered because discovery was needed). This Court's ruling on the Defendant's motion for partial summary judgment is consistent with Rule 56 and the "principal purpose of the summary judgment rule . . . to isolate and dispose of factually unsupported claims[.]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

    2.   <u>February 2005</u>

Turning to the second time period alleged in support of Count I of the Plaintiff's Amended Complaint, the Plaintiff alleged that in February 2005 the Defendant furnished to Experian, a consumer reporting agency, "unknown information" about the Plaintiff's account. In further support of this allegation, however, the Plaintiff relied on and attached to her complaint a report she obtained from Experian. This report contains information about the Plaintiff's account with the Defendant including: (1) Account Number: 43694; (2) Status: Petition for Chapter 13 bankruptcy; (3) Date Opened: 10/2003; (4) Date of Status: 06/2004; (5) Reported Since: 02/2005; (6) Last Reported Date: 02/2005; (7) Type: Mortgage; (8) Terms: 30 Years; (9) Monthly Payment: $0; (10) Responsibility: Individual; (11) Credit Limit: $51,300 (12) High Balance: N/A; (13) Recent Balance: $0; (14) Recent Payment: $0; (15) Creditor's Statement: Foreclosure proceedings started; and (16) Account History: Filed Chapter 13 Bankruptcy on "June 25, 2004."

Relative to any post-petition information furnished by the Defendant to consumer reporting agencies, the Defendant asserts that the Amended Complaint fails to state a claim under Section 362(a)(6). Defendant points out that its report "is nothing more than words, in the form of a communication to a credit reporting agency made nearly six years ago. Plaintiff does not allege that GMAC in any way acted on those words, by contacting Plaintiff, by issuing demand for payment, by filing suit or by engaging in any conduct whatsoever . . . , to harass Plaintiff or collect a debt." The Defendant argues further that any alleged failure on its part to "update" the status of the Plaintiff's account is not "actionable conduct" under Section 362(a)(6) because it is not an "act" to collect a debt. The Defendant contends that the Plaintiff's Amended Complaint fails to state a violation of the automatic stay under Section 362(a)(6) based on the Sixth Circuit Court of Appeals holding in *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423-25 (6th Cir. 2000).

In opposing the Defendant's motion, the Plaintiff asserts that the Amended Complaint pleads sufficient factual allegations to support her violation of automatic stay claim against the Defendant relative to the February 2005 time period. In her brief, the Plaintiff argues that the February 2005 post-petition report made by the Defendant to consumer reporting agencies "is an affirmative representation that monies are due and owing."

In addition, the Plaintiff contends that the Defendant's reliance on *Pertuso*, is misplaced because the facts in *Pertuso* involved a creditor's one-time solicitation of a reaffirmation agreement to a debtor post-petition. Plaintiff asserts that creditors and debtors routinely negotiate reaffirmation agreements as part of the bankruptcy process in order to allow debtors to keep secured assets. The Plaintiff maintains that a mutually agreed upon reaffirmation agreement by a creditor and debtor is vastly different from the Defendant's attempts to collect a

15

debt through its furnishing of negative information, more than once, about the Plaintiff's account to consumer reporting agencies.

The Plaintiff further argues that the Defendant's intent, at the time it furnished information about her account or failed to update and provide accurate information about her account, is the central element of her automatic stay violation claim. Plaintiff asserts that the inquiry required under Section 362(a)(6) is whether the Defendant furnished information to consumer reporting agencies in February 2005 with the intent to harass or coerce the Plaintiff into paying its pre-petition claim. In support of her position, the Plaintiff relies on *Singley v. American General Finance*, 233 B.R. 170 (Bankr. S.D. Ga. 1999), and *In re Sommersdorf*, 139 B.R. 700 (Bankr. S.D. Ohio 1991).

The Court concludes that the Sixth Circuit Court of Appeals decision in *Pertuso* establishes the appropriate framework to guide a court in its assessment of allegations about a creditor's conduct against a debtor for purposes of Section 362(a)(6). Thus, the Sixth Circuit has held that "a course of conduct violates Section 362(a)(6) if it '(1) could reasonably be expected to have a significant impact on the debtor's determination as to whether to repay, and (2) is contrary to what a reasonable person would consider to be fair under the circumstances.'" *Pertuso*, 233 F.3d at 423 (citing *In re Briggs*, 143 B.R. 438, 453 (Bankr.E.D.Mich. 1992)).

Viewed as a whole, the Court determines that the facts alleged in Count I of the Amended Complaint with regard to the February 2005 time period simply do not suggest a course of conduct that could be expected to have a significant impact on the Plaintiff's determination to repay her then outstanding claim to the Defendant. Absent from the Amended Complaint are any allegations that the Defendant engaged in any direct contact with the Plaintiff. There are no allegations that the Defendant called the Plaintiff or sent any correspondence to her.

16

Instead, the Plaintiff alleges that the Defendant's collection "act" consists of its alleged furnishing of information in February 2005 about the Plaintiff's account to one consumer reporting agency, Experian. The Court concludes that this allegation is a legal conclusion framed as a factual allegation. The Court does not accept it as being true. *Twombly*, 550 U.S. at 555.

The allegations pled by the Plaintiff prevent the Court from drawing an inference that the Defendant's act of furnishing information to one consumer reporting agency, Experian, was done to place pressure on the Plaintiff to coerce her into paying her pre-petition loan obligation to the Defendant. The report from Experian relied on by the Plaintiff does not contain any information about an existing past due balance on the Plaintiff's loan or the extent of the payment history on the loan as of February 2005. Contrary to the Plaintiff's argument, there is nothing in the report to indicate that the Defendant made "an affirmative representation that monies are due and owing." In addition, the report from Experian indicates that a Chapter 13 petition had been filed, even though the stated date of June 25, 2004 appears to be incorrect.

Also, the Amended Complaint makes conclusory allegations based "on information and belief" about the Defendant's failure to accurately report the transfer of its servicing rights according to "industry standards" and, as a result then that, "the Defendant was maintaining that it was owed monies it was not owed." These allegations are devoid of factual detail and are insufficient under Rule 8. This Court is unable to determine from the remaining factual allegations whether it is plausible that the Defendant furnished information to Experian in an effort to collect a debt. While it is certainly conceivable and possible that the Defendant may have done so, another probable explanation exists. The allegations in the Amended Complaint are consistent with a creditor's routine ability to furnish information to Experian or other

17

consumer reporting agencies simply to provide the current status of a debtor's account including a notation about a pending bankruptcy case. As a result, the Court concludes that the allegations in Count I for the time period of February 2005 stop short of the line between possibility and plausibility of entitlement to relief. *Iqbal*, 129 S.Ct. at 1949.

The Court notes that in reaching its conclusion that it reviewed *In re Singley*, 233 B.R. 170 (Bankr. S.D. Ga. 1999) and *In re Sommersdorf*, 139 B.R. 700 (Bankr. S.D. Ohio 1991), cited by the Plaintiff in her brief. The Court found them to be unpersuasive authority because both of these cases are easily distinguishable from the circumstances in this proceeding. First, both of these cases did not involve motions to dismiss under Rule 12(b)(6) and were prior to the U.S. Supreme Court's recent *Twombly* and *Iqbal* decisions on the pleading requirements of Rule 8. Second, the holding in *Sommersdorf* pre-dates the Sixth Circuit's decision in *Pertuso*.

B.    *Discharge Injunction*

After a Chapter 13 debtor completes all payments under her plan, 11 U.S.C. § 1328(a) provides for a discharge of all debts provided for by the plan. Section 524(a)(2) states in pertinent part:

> (a) A discharge in a case under this title—
>
> > (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

The injunction under Section 524(a)(2) replaces the automatic stay set forth in Section 362(a) of actions to pursue collection of debts from the debtor personally. *In re Perviz*, 302 B.R. 357, 369 (Bankr.N.D. Ohio 2003) ("[Section] 524(a)(2) simply makes permanent what had previously

18

been temporary under § 362(a)(6).") (citation omitted). "The purpose of the permanent injunction is to effectuate one of the primary purposes of the Bankruptcy Code: to afford the debtor a financial 'fresh start.'" *In re Miller*, 247 B.R. 224, 228 (Bankr.E.D. Mich. 2000).

The Defendant argues that Count II must be dismissed for failure to state a claim for two reasons. The Court will address each argument separately. One of the arguments raised by the Defendant is that the Sixth Circuit Court of Appeals in *Pertuso*, 233 F.3d at 422-23, held that a private cause of action for damages is not available to a debtor for an alleged violation of Section 524(a). The Defendant asserts that under Count II of the Amended Complaint, the Plaintiff, contrary to *Pertuso*, seeks to recover damages pursuant to a private right of action based on an alleged violation of the discharge injunction under 11 U.S.C. § 524. The Plaintiff disagrees with the Defendant's characterization of its allegations in Count II. The Plaintiff argues that under Count II she is specifically requesting that the Court exercise its powers of contempt under 11 U.S.C. § 105(a) and is not asserting any private cause of action under Section 524(a). The Court is persuaded by the Plaintiff's argument.

The Court notes that in Count II at paragraph 38 of the Amended Complaint the Plaintiff expressly alleged and requested relief from this Court pursuant to its contempt powers to address the Defendant's alleged violation of the discharge injunction. As recognized by the Defendant, it is well-settled in the Sixth Circuit that there is no statutory private right of action for a violation of the discharge injunction. *Pertuso*, 233 F.3d at 421-23. Yet, the *Pertuso* Court also explained that instead, a debtor, like the Plaintiff in the instant proceeding, may bring civil contempt charges against a party for violation of the discharge injunction. *Id*. ("[T]he traditional remedy for violation of an injunction lies in contempt proceedings.") "The modern trend in civil contempt proceedings is for courts to award actual damages for violations of § 524's discharge

19

injunction, and, where necessary to effectuate the purposes of the discharge injunction, a debtor may be entitled to reasonable attorney fees." *Miles v. Clarke* (*In re Miles*), 357 B.R. 446, 450 (Bankr. W.D. Ky. 2006) (citations omitted). The Court determines that Court II of the Plaintiff's Amended Complaint provides sufficient notice to the Defendant that the remedy sought by her involves contempt proceedings. The Court denies the Defendant's motion to dismiss on the basis that the Count II is premised on a private right of action under Section 524(a).

The Defendant's next argument for dismissal of Count II is that the Plaintiff fails to state a claim because she failed to allege that any information furnished by it occurred after the Plaintiff was awarded a discharge. The Defendant contends that the discharge injunction under Section 524(a) does not require it to modify accurate information furnished to consumer reporting agencies prior to the filing date of her bankruptcy petition. In line with this argument, the Defendant asserts that even if it furnished information to consumer reporting agencies post-discharge, the Plaintiff has failed to allege that any post-petition information provided by it was done so with the intent and for the purpose of collecting a discharged debt. In support of this argument, the Defendant cites *In re Jones,* 367 B.R. 564 (Bankr.E.D.Va 2007).

The Plaintiff disagrees with the Defendant's interpretation of the allegations pled in the Amended Complaint. The Plaintiff asserts that the allegations pled against the Defendant to support her violation of discharge injunction claim sufficiently call in to question the Defendant's intent at the time it furnished inaccurate and false information to consumer reporting agencies about her account. In support of her argument, the Plaintiff relies on several cases including: *In re Luedtke*, No. 02-35082, 2008 Bankr. LEXIS 2118 at *6-7 (Bankr. E.D. Wis. July 31, 2008); *Russell v. Chase Bank, N.A.* (*In re Russell*), 378 B.R. 735 (Bankr. E.D.N.Y. 2007); *Lohmeyer v. Alvin's Jewelers* (*In re Lohmeyer*), 365 B.R. 746 (Bankr. N.D. Ohio 2007);

and *Torres v. Chase Bank* (*In re Torres*), 367 B.R. 478 (Bankr. S.D.N.Y. 2007). The Plaintiff

further points out that paragraphs 31 and 36 of the Amended Complaint contain "at least two

direct assertions [that] Defendant was attempting to collect a debt."

To establish that a party is in civil contempt, "a plaintiff must prove that the defendant

'violated a definite and specific order of the court requiring him to perform or refrain from

performing a particular act or acts with knowledge of the court's order.'" *Gunter v. O'Brien &*

*Associates Co*., 389 B.R. 67 (Bankr. S.D. Ohio 2008) (quoting *Liberte Capital Group, LLC v.*

*Capwill*, 462 F.3d 543, 550 (6th Cir. 2006) (quoting *Glover v. Johnson*, 934 F.2d 703, 707 (6th

Cir. 1991))). "In the context of the discharge injunction, this means that the debtor must

demonstrate that the defendant[] (i) violated the discharge injunction (and thus the order granting

the discharge) and (ii) did so with knowledge that the injunction was in place. *Id*. (citing *In re*

*Franks*, 363 B.R. 839, 843 (Bankr. N.D. Ohio 2006)). In the Sixth Circuit, a creditor must have

actual knowledge of the injunction to give rise to contempt; constructive knowledge is

insufficient. *Id*. (citing *Newman v. Ethridge* (*In re Newman*), 803 F.2d 721, 1986 WL 17762 at

*1 (6th Cir. 1986) (unpublished decision)).

When faced with a motion to dismiss, a court is to begin by identifying those allegations

that are not entitled to the assumption of truth because they are no more than legal conclusions.

*Iqbal*, 129 S.Ct. at 1950. Then a court is to examine any remaining well-pleaded factual

allegations, assume their veracity, and "then determine whether they plausibly give rise to an

entitlement to relief." *Id*.

Applying this standard to the allegations in Count II, the Court notes that the Plaintiff's

allegations that any information furnished by the Defendant to consumer reporting agencies after

July 3, 2008, the date the Plaintiff was awarded a Chapter 13 discharge, are "attempts to collect a

debt" are legal conclusions and are not entitled to be assumed true.

Next the Court considers the factual allegations of the Amended Complaint to determine if they provide the Defendant with notice of a contempt of court proceeding and plausibly suggest an entitlement to relief. With regard to Count II, the Amended Complaint states that the Defendant held a claim against the Plaintiff at the time she filed her Chapter 13 bankruptcy petition on September 7, 2004; the Defendant filed an amended proof of claim on September 17, 2004, representing that it held a secured claim of $54,646.36, which included an arrearage amount of $4,352.60; that the treatment and payment of the Defendant's claim was provided for based on provisions of the Plaintiff's Chapter 13 plan, which was confirmed on February 10, 2005; that under the Plaintiff's confirmed Chapter 13 plan on a monthly basis the total amount of $693.00 (which consists of $493.00 on the monthly mortgage payment and $200 on an arrearage of $5,400) was paid on the Defendant's claim; that on April 13, 2005, a notice of transfer of the Defendant's claim was filed; that on July 18, 2005, a second notice of transfer of the Defendant's claim was filed; that the Defendant "failed to accurately report to the credit reporting agencies that the loan and/or servicing rights had been transferred to another entity in 2005."; that the Defendant "by failing to comply with industry standard," to update its records and then to furnish such updated information to third parties, "was maintaining that it was owed monies that it was not owed because the loan had been transferred"; that as of April 1, 2010, the Defendant continued to report a past due amount of $1,607.00 with a date reported of "09/2004" and an account status of "Pays 61-90 days"; and that the Plaintiff's attempt to refinance her home was denied because the Defendant had continued to allow a past due balance to remain on her credit report for several years.

The Court recognizes that the Amended Complaint establishes that the Plaintiff was

awarded a discharge on July 3, 2008, and the discharge injunction was immediately effective on this date. Subsequent to this date, a creditor whose debt was provided for by the Plaintiff's confirmed Chapter 13 plan would not be able to pursue the debtor personally for payment based on the discharge injunction under Section 524(a). 11 U.S.C. § 1328(a) ("the court shall grant a debtor a discharge of all debts provided for by the plan"); *see also Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 2153 (1991) (explaining that with regard to a mortgage lien "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an act against the debtor *in personam*").

As pointed out by the Defendant, the Court is unable to draw the reasonable inference that the Defendant's furnishing of information to consumer reporting agencies in April 2010 consisted of an attempt to collect a discharged debt from the Plaintiff. The Plaintiff's position appears to be that the information furnished by the Defendant about the Plaintiff's account having an outstanding past due balance of $1,607 as of "9/2004" along with a payment history of 61-90 days is a false, inaccurate, and misleading representation about the Plaintiff's account because it fails to acknowledge the treatment and payment of the Defendant's claim under her confirmed Chapter 13 plan.

Assuming the truth of the factual allegations in the Plaintiff's Amended Complaint to support Count II, the Court is able to infer that pursuant to the Plaintiff's confirmed plan the Defendant could have received payments to cure the past due amount of $1,607 prior to the filing date of the first or second notice of transfer and assignment of the Defendant's claim. Then, as further alleged by the Plaintiff, the Defendant "by failing to comply with industry standard," to update its records and then to furnish such updated information to third parties, "was maintaining that it was owed monies that it was not owed because the loan had been transferred." These

allegations, however, prevent the Court from inferring that there is any debt remaining for the Defendant to personally collect from the Plaintiff. In fact, they lead to the exact opposite conclusion — either there is no debt remaining at all for the Defendant to collect from the Plaintiff because the Defendant's claim was paid in full by payments it received from the Chapter 13 Trustee or any balance remaining on the Plaintiff's debt to the Defendant was transferred and assigned to MTGLQ Investors, L.P. and Ocwen Federal Bank under the second notice of transfer claim filed in July 2005. The Court notes that additional flaws exist in the Plaintiff's contempt of discharge injunction claim because the Amended Complaint does not contain any allegation that the Defendant's debt was discharged in the Plaintiff's bankruptcy case or that the Defendant had actual notice of the discharge injunction. Again, the reasonable inference to be drawn from the Plaintiff's allegations is that the Defendant's involvement in the Plaintiff's bankruptcy case ceased sometime in early to mid-2005.

At this point, the Court notes that both parties relied on cases that discuss the diverging viewpoints that exist in the reported and unreported decisions on the intent aspect of a discharge injunction violation claim premised on information furnished by creditors to consumer reporting agencies. While the Court considered each of the cases cited by the parties, it finds the following concise analysis in the *Jones* case to be persuasive:

> a distinction must be made between acts which have as their direct and natural purpose the collection of debts and acts which have some other lawful purpose but could also be used (or, more accurately, misused) to coerce payment of a debt. The reporting of a delinquent debt to a credit reporting agency is not inherently an act to collect a debt but rather to share information relevant to credit granting decisions. A creditor [furnishes information on] both performing and delinquent accounts in the expectation that other credit grantors will do the same, enhancing each creditor's ability to evaluate proposed credit transactions and to avoid extending credit or making loans to poor credit risks.
>
> This is not to say that the reporting of a discharged debt as delinquent rather

> than discharged would not, at least in some circumstances, place pressure on the debtor to pay the debt. And the court does not doubt that there are at least some creditors who report discharged debts without an indication of their bankruptcy status in the hope that debtors will be pressured into paying them as a condition of obtaining future credit. But where the action complained of does not on its face constitute an act to collect a debt [(i.e, an intentional act in violation of the discharge injunction)], the burden is on the debtor to show that the creditor took the challenged action for the specific purpose of collecting a discharged debt.

*Jones*, 367 B.R. at 569-570 (alteration and footnote omitted).

As previously recognized by the Court, the allegations pled in the Plaintiff's Amended Complaint about the Plaintiff's intent were deficient. Such allegations were nothing more than legal conclusions phrased as factual allegations.

As a whole then, the allegations pled in support of Count II in the Amended Complaint fail to set forth sufficient factual content to plausibly suggest that the Defendant engaged in conduct that violated the discharge injunction. The Court grants the Defendant's motion to dismiss Count II of the Amended Complaint subject to the Plaintiff being allowed to file a second amended complaint within 14 days to remedy the factual deficiencies in the Amended Complaint.

C.      *Fair Credit Reporting Act*

    1.      Defendant's Motion to Dismiss

In Count III of the Amended Complaint, the Plaintiff alleges that the Defendant violated the Fair Credit Reporting Act ("FCRA") when it obtained a copy of her consumer report for a use contrary to a statutory permissible purpose. The FCRA is a subchapter of the Consumer Credit Protection Act. 15 U.S.C. §§ 1681 - 1681x (West 2010). It was enacted "to promote efficiency in the Nation's banking system and to protect consumer privacy." *See TRW, Inc. v. Andrews*, 534 U.S. 19, 23, 122 S.Ct. 441 (2001). Protecting consumers from the improper use of

consumer reports is an underlying policy of the FCRA. *Jones v. Federated Fin. Reserve Corp*.,

144 F.3d 961, 965 (6th Cir. 1998).

> 15 U.S.C. § 1681b(f) provides:

>> A person shall not use or obtain a consumer report for any purpose unless—

>>> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

>>> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

Section 1681a(d) of the FCRA defines the term consumer report to mean

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for–

>> (A) credit or insurance to be used primarily for personal, family, or household purposes;

>> (B) employment purposes; or

>> (C) any other purpose authorized under section 1681b of this title.

A list of permissible purposes for a consumer reporting agency to provide a consumer report to a

creditor appears at 15 U.S.C. § 1681b(a)(3), which states in pertinent part:

> (a) In general.  Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

> . . . .

>> (3) To a person which it has reason to believe–

>>> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and

involving the extension of credit to, or review or collection of an account of, the consumer; or

. . . .

(F) otherwise has a legitimate business need for the information–

(i) in connection with a business transaction that is initiated by the consumer; or

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

To state and prove a claim based on improper use or acquisition of a consumer report, a plaintiff must establish three elements: (i) that there was a "consumer report" within the meaning of the statute; (ii) that the defendant used or obtained it; and (iii) that the defendant did so without a permissible statutory purpose. *McFarland v. Bob Saks Toyota, Inc.*, 466 F.Supp.2d 855, 867 (E.D. Mich. 2006) (citing *Phillips v. Grendahl*, 312 F.3d 357, 364 (8th Cir. 2002)); *Gillom v. Ralph Thayer Automotive Livonia, Inc.*, 444 F.Supp.2d 763, 771 (E.D. Mich. 2006)).

Under the FCRA, a plaintiff may recover actual and statutory damages for a willful violation of the Act. 15 U.S.C. § 1681n. For negligent violations, a plaintiff may recover only statutory damages. 15 U.S.C. § 1681o. To state a claim for civil liability, a plaintiff must allege that a defendant had the requisite culpability of either negligence or willfulness.

In Count III of the Amended Complaint, the Plaintiff alleges that her account with the Defendant had been closed as early as August 2004 or, at the latest, as of July 2005. Plaintiff further alleges that the Defendant accessed her "credit report" on February 3, 2010, to conduct an account review. The Plaintiff alleges that because her account with the Defendant was closed, the Defendant did not have a permissible purpose, as required under the Fair Credit Reporting Act, to obtain her consumer report. Plaintiff further alleges that the Defendant's

27

actions violate 15 U.S.C. § 1681b(a)(3)(A) and § 1681b(f). The Plaintiff requests both actual and statutory damages for the Defendant's willful violations of the FCRA as expressly provided by 15 U.S.C. §§ 1681n(a)(1)(B) and (a)(1)(3), which statutory subsections state:

(a) In general

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of–

. . . .

(1)(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

. . . .

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

The Defendant moves for dismissal of Count III for two reasons. First, the Defendant contends its "inquiry" relative to the Plaintiff's consumer report was in response to the demand and threat of a lawsuit as stated in Plaintiff's counsel's email of January 31, 2010. Defendant asserts that its inquiry and account review was based on a "legitimate business need," which is defined as being a permissible purpose under 15 U.S.C. § 1681b(3)(E). In support of its position, the Defendant relies on *Spence v. TRW, Inc.*, 92 F.3d 380, 383 (6th Cir. 1996), which found that a consumer reporting agency did not violate 15 U.S.C. § 1681b by furnishing a consumer report to a creditor defending against a false reporting of past due debt lawsuit once it determined that the creditor had a legitimate business need for the information in the credit report.

28

Second, the Defendant argues the FCRA does not require that an open account exist in order to create a permissible purpose defense. As a result, the Defendant requests that the Court conclude that the distinction between open and closed accounts in not proscribed by the FCRA and dismiss the Plaintiff's Count III for failure to state a viable claim. The Defendant relies on the holding of *Levine v. World Financial Network Nat.'l Bank*, 554 F.3d 1314 (11th Cir. 2009) to support this argument. The issue in *Levine* involved whether a consumer reporting agency willfully violated the FCRA when it sold a consumer report to a creditor for an account review subsequent to the closure of the creditor's account by the consumer based on its interpretation of unclear language contained in Section 1681b. The Eleventh Circuit Court of Appeals affirmed the district court's grant of summary judgment to the consumer reporting agency on the basis that the agency did not willfully violate the FCRA due to its objectively reasonable interpretation of ambiguous language used in Section 1681b that the sale of reports for consumers with closed accounts was permissible.

In opposing the Defendant's motion, the Plaintiff contends that the allegations in its Amended Complaint to support her FCRA claim are sufficient to meet the pleading requirements of Rule 8. In addition, the Plaintiff argues that the Court should disregard the Defendant's reliance on both *Spence* and *Levine* because both of these cases have limited applicability in this proceeding due to their factual and legal differences. The Court agrees with the Plaintiff.

At this point in the litigation, the Court concludes that the Plaintiff has stated a valid cause of action in Count III under the FCRA. The Plaintiff alleged that the Defendant obtained her consumer report in February 2010. In her Amended Complaint, the Plaintiff further alleged that the Defendant did so without a statutorily permissible purpose because her account with the Defendant was no longer open. These allegations are sufficient, at this stage, "to state a claim to

relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Defendant's Motion in regard to Count III is denied.

 2. <u>Jurisdiction of this Court regarding Count III</u>

 The Court notes that the FCRA count of Plaintiff's Amended Complaint is not based on the Bankruptcy Code. Significant jurisdiction issues may exist that the parties have not had the opportunity to address to date. The Court will conduct a status conference on April 26, 2011, at 1:30 p.m., to consider the jurisdictional issues.

 Counsel for Defendant is directed to prepare an Order consistent with this Opinion.

**Signed on March 31, 2011**

 **/s/ Daniel S. Opperman**
 **Daniel S. Opperman**
 **United States Bankruptcy Judge**